# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL MOORE, | : | CIVIL NO. 1:15-CV-503 |
| Petitioner, | : | (Judge Kane) |
| v. | : | (Magistrate Judge Carlson) |
| WARDEN SPAULDING, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of The Case

This is a habeas corpus petition brought by Samuel Moore, a criminal recidivist and a District of Columbia prisoner incarcerated at the United States Penitentiary, Allenwood. In his petition Moore challenges a Parole Commission decision revoking his parole and re-committing him to serve the remainder of his D.C. sentence, arguing that the Parole Commission's delay in conducting this revocation hearing violated his right to due process. For the reasons set forth below, while we concede that some significant delay occurred in this case, we do not find that this delay was both unreasonable and prejudicial to Moore's presentation of his case for parole. Therefore, it is recommended that this petition for writ of habeas corpus be denied.

## A.     Moore's Criminal History and Parole Proceedings

Samuel Moore has a criminal history which spans 45 years and began in August of 1970 when he was charged with attempted burglary at the age of 16. (Doc. 10-2, p. 19.) In the ensuing years Moore was convicted of robbery in 1971 and 1972, as well as petit larceny in 1973, before incurring the armed robbery conviction in 1974 which ultimately led to these parole proceedings. (Id.)

On October 2, 1974, Moore was convicted in the District of Columbia of armed robbery following an episode in which Moore and an unknown co-defendant entered a cleaners and robbed the register at gun point. (Id., p. 18.) Moore was sentenced to 5 to 25 years imprisonment on this armed robbery charge, and was initially paroled on this offense on May 4, 1981. (Id.) Within 14 months of his release Moore's parole was revoked on July 23, 1982, as a result of his conviction for possession of an unregistered firearm and ammunition. Following this revocation, Moore was re-paroled on October 1, 1982. (Id.)

While on parole Moore was charged by state authorities in Maryland for participating in a December 28, 1994, armed robbery, kidnaping and assault. During the course of this offense it was alleged that Moore and several co-conspirators engaged in a gunpoint home invasion robbery of the victim, stealing cash and jewelry from the victim before abducting the victim and taking him to his place of business

where he escaped and summoned police. Arrested, Moore was tried and convicted of these charges. On February 16, 1996, Moore was sentenced to 30 years imprisonment on the kidnaping charge, and concurrent 20 year sentences on the related robbery and firearms charges. (Id., p. 19.)

On April 24, 1995, while these Maryland charges were pending against Moore, the District of Columbia parole board issued a warrant which was lodged as a detainer against Moore, charging that Moore violated the conditions of his parole by possessing a weapon and failing to obey all laws. (Doc. 10-2, Ex. 3.) This detainer remained in place as Moore served his state sentence. On August 9, 2012, Moore completed service of this state sentence, and the parole violation warrant was executed by the United States Marshals Service. Warrant Return (Doc. 10-2, Ex. 7.) On July 2, 2013, the United States Parole Commission, which has assumed statutory responsibility for parole decisions relating to District of Columbia parolees like Moore, supplemented the initial D.C. Board's detainer warrant with additional information about the law violation charge: specifically noting the Kidnaping/Assault, Robbery with a Dangerous Weapon, and Use of a Handgun during a Crime of Violence charges which Moore had been convicted of in Maryland and sentenced to serve an aggregate 30-year sentence. (Doc. 10-2, Ex. 8.)

The reason for the delay in initiating these parole proceedings following the marshals' execution of the parole violator warrant is not entirely clear. However, once the Parole Commission was notified by a relative of Moore's that this delay had occurred in June of 2013, it acted with dispatch. Thus, on July 3, 2013, the Commission informed Moore that it had found probable cause to believe he had violated the conditions of his parole and had ordered a revocation hearing. (Doc. 10-2, Ex. 10.) On January 27, 2014, the Commission conducted a parole revocation hearing for Moore at the Federal Detention Center in Philadelphia, Pennsylvania. Moore was represented by counsel at this hearing, and during the course of the hearing tried to contest the underlying facts of his 1996 Maryland conviction, arguing that he was innocent of this crime.

At the conclusion of this hearing, the Hearing Examiner found that Moore had violated the conditions of his parole as charged, based upon his prior criminal convictions, and recommended to the Commission that Moore's parole be revoked, that he receive no credit for time spent on parole, and that he be reparoled on May 24, 2014, after service of 230 months, to allow time for release planning. (Doc. 10-2, Ex.12.) The Commission adopted the recommendation to revoke parole and forfeit credit for time spent on parole, but declined to adopt the recommendation for re-parole. (Id.) Instead, citing Moore's recidivism, the Commission voted to deny

reparole and required Moore to serve to the expiration of his sentence. (Id.) As the Commission explained in its March 28, 2014, letter informing Moore of this decision:

> After review of all relevant factors and information, a decision above the guidelines [of 100-148 months] is warranted because you are a more serious risk than indicated by the guidelines, in that you [engaged in] ongoing violent activity in the community. Specifically, your parole violations included new criminal behavior that involved robbing victims at gunpoint in their own residence and Kidnaping one victim by forcing him to another location in an attempt to obtain more cash. At the time that you committed this offense, you were on parole from an armed robbery offense from 1974 and already had a total of three prior convictions for robbery related crimes. During a previous period of parole, you were arrested and convicted of possessing a firearm. Parole has not deterred you from possessing a weapon and committing violent crimes in the past and the Commission believes you are a high risk to continue to do so if granted parole again.

(Id., Ex. 13.) Moore appealed this decision, advancing a claim that is now reprised in this petition, and arguing that the 17 month delay in conducting this parole hearing after the marshals executed the parole detainer prejudiced Moore in his parole presentation since: "At a timely hearing, Mr. Moore would have presented the live testimony of his trial witnesses, namely his co-workers, who would have provide[d] an alibi for Mr. Moore on the night of the alleged robbery." (Doc. 10-2, p. 37.) Thus, the gravamen of Moore's administrative appeal was that he was prejudiced when he was denied an opportunity to belatedly reprise an alibi defense which had failed at the time of his Maryland prosecution in 1996. The Commission rejected this

5

administrative appeal, noting in part that a claim of innocence on the underlying charges which resulted in a conviction and led to this parole revocation was not a matter that the Commission would entertain. Having rebuffed Moore's efforts to convert this parole hearing into a re-trial of this alibi defense to his 1996 criminal case, this decision was affirmed on administrative appeal. (Id.,Ex. 14 and Ex. 15.)

### B. The Instant Habeas Corpus Petition

Dissatisfied with this outcome, Moore filed the instant habeas corpus petition. (Doc. 1.) In this petition Moore challenged the Commission's actions on due process grounds, arguing that the delay in conducting this parole hearing compels a revocation of the Commission's decision. These contentions have been fully briefed by the parties, (Docs. 1, 10.), and are now ripe for resolution. For the reasons set forth below, we recommend that the court deny Moore's petition.

## II. Discussion

### A. Habeas Relief–The Legal Standard

In this case, Samuel Moore, a prisoner serving various sentences imposed by the District of Columbia Superior Court, has filed a petition for writ of habeas corpus challenging Parole Commission action extending his parole release date. While Moore has styled his petition as one brought under 28 U.S.C. §2241, in fact because he "was convicted by a District of Columbia court, he is considered a state prisoner.

6

See Madley v. United States Parole Comm'n, 278 F.3d 1306, 1309 (D.C.Cir.2002). Thus, although styled as a § 2241 petition, his petition should [be] treated as one filed pursuant to 28 U.S.C. § 2254." Robinson v. Reilly, 340 F. App'x 772, 773 (3d Cir. 2009).

Treated as a petition filed pursuant to 28 U.S.C. § 2254, this petition is subject to the substantive and procedural standards that govern habeas petitions under §2254. Thus, Moore must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a . . . court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254 (a).

As this statutory text implies, prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief under §2254. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a . . . court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which

violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to prisoners in those instances where the conduct of some proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).

### B. These Claims Fail on Their Merits

In this case, Moore's petition presents a due process challenge to the Parole Commission's decision, a due process challenge which is premised on Moore's belief that there has been an unconstitutionally unreasonable delay between the time when the Commission first lodged its parole detainer against him in 1995 and when the Commission conducted its parole revocation hearing in 2014. In Moore's view, this delay prejudiced his parole presentation in such a fundamental way that the parole determination must be set aside and he must be released.

While we acknowledge that there was some lengthy delay in this matter, it does not follow from that delay alone that Moore is entitled to release from custody. Due process determinations in this field are not mere exercises in arithmetic, the tallying of days. Rather, a more comprehensive analysis is necessary here, one that considers

8

both the nature and reasonableness of the delay, as well as the prejudice suffered by the petitioner as a result of this delay.

In undertaking this analysis, we note at the outset that the vast majority of the delay cited here by Moore involved a period during which Moore was serving his state sentence in Maryland for kidnaping, robbery and firearms offenses, and was subject to a parole detainer. This period spans from 1995 through 2012. In his petition, Moore suggests that the decision of the Commission to lodge a parole warrant as a detainer and await the completion of his state sentence led to a delay which somehow offends due process. The difficulty with this argument, which would require parole authorities to act upon parole warrants even before a prisoner completed service of an underlying criminal sentence, is that this claim has been foreclosed by the United States Supreme Court. In Moody v. Daggett, 429 U.S. 78, 89 (1976), the Supreme Court held that a parole violator's due process rights to a hearing is triggered by execution of a warrant, not by the lodging of a detainer. Thus, "[t]he Commission . . . has no constitutional duty to provide petitioner an adversary parole hearing until [the petitioner] is taken into custody as a parole violator by execution of the warrant." Id. Given Moody, any efforts by Moore to assert a constitutional claim based upon the passage of time between the lodging of this detainer in 1995 and the execution of the parole warrant in 2012 are unavailing.

We are left, then, to consider the due process implication of the 17 month delay between the execution of this warrant in the summer of 2012, and Moore's parole revocation haring in January 2014. At the outset, we note that this delay exceeds the timetables prescribed by the Commission's own operating procedures for a revocation hearing, but this fact, standing alone, does not compel the habeas corpus relief Moore seeks. See Bryant v. Grinner, 563 F.2d 871, 872 (7th Cir. 1977) (noting that "if the Parole Commission fails to meet a deadline for decision-making established by the Act, the proper remedy would be to compel the decision and not to release the prisoner from custody.") It is well-settled that "'delay, per se, does not constitute a violation of due process entitling an accused violator to immediate release where the parolee has … been afforded the revocation hearing and the facts of the violation fairly adjudicated.'" McNeal v. United States, 553 F.2d 66, 68 (10th Cir. 1977).

Rather, in this setting a due process claim based upon delay in conducting a parole hearing requires a showing both of an unreasonable delay and some prejudice to the petitioner. As this court has observed in passing on such due process claims we should be guided by: "The factors relating to speedy trial violations, set forth by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) [namely] the length of the delay between the levelling of charges and the hearing, the reason for the delay, the accused's assertion of his rights, and any

prejudice which results to him. See United States ex rel. Sims v. Sielaff, 563 F.2d 821, 827-28 (7th Cir. 1977)." U.S. ex rel. Fitzpatrick v. U.S. Parole Comm'n, 444 F. Supp. 1302, 1304 (M.D. Pa. 1978). Thus, in a parole setting we apply "a two-pronged test to determine whether to grant the habeas petition because of delay: first, whether the delay was unreasonable; and second, whether the delay was prejudicial to a legally protected interest. Lambert v. Warden, United States Penitentiary, 591 F.2d 4 (5th Cir. 1979). See Smith v. United States 577 F.2d 1025 (5th Cir. 1978); Bryant v. Grinner, 563 F.2d 871 (7th Cir. 1977); United States ex rel. Sims v. Sielaff, 563 F.2d 821 (7th Cir. 1977); United States ex rel. Fitzpatrick v. United States Parole Commission, 444 F.Supp. 1302 (M.D.Pa.1978)." Maslauskas v. U.S. Bd. of Parole, 639 F.2d 935, 938 (3d Cir. 1980).

Here, we submit that Moore has met his threshold burden of showing a significant delay, and the timely assertion of his rights. The delay of 17 months here is of a significant duration, and its appears that it was Moore, through family members, who first brought this delay to the attention of the Commission, thus satisfying Moore's responsibility to exercise due diligence in asserting his rights.

Yet, while Moore has met this initial burden of demonstrating a substantial delay, his petition fails to satisfy the second pillar of a due process claim in this setting: a showing that the delay was prejudicial to a legally protected interest. In

this case, we cannot discern any demonstrable, legally cognizable prejudice to Moore's parole presentation caused by this delay. Moore's inability to demonstrate prejudice is in large measure a function of the litigative choices which he has made during his parole proceedings. In these proceedings, Moore elected to attempt to retry his Maryland state kidnaping case, asserting that he was innocent of this crime and arguing that "[a]t a timely hearing, Mr. Moore would have presented the live testimony of his trial witnesses, namely his co-workers, who would have provide[d] an alibi for Mr. Moore on the night of the alleged robbery." (Doc. 10-2, p. 37.)

With his due process claim framed in these terms, the claim fails to show any prejudice to a legally protected interest on several scores. First, as a general rule, a parole hearing is not the proper venue to re-litigate issues of innocence and guilt on the underlying criminal charge of conviction which have led to the revocation proceedings. See Jones v. Swarthout, No. 2:11-CV-01186 KJM, 2012 WL 2499955, at *3 (E.D. Cal. June 27, 2012). Therefore, the Commission properly declined to engage in a retrial of this 1996 conviction, or a rehearing of Moore's discredited alibi defense in that 1996 case. Moreover, even if this failed alibi defense had some relevance to the 2014 parole revocation hearing, Moore has not shown that he was deprived the opportunity to present that defense in some fashion due to the delay in scheduling this hearing. Moore alleged to the Commission that he wished to present

the testimony of his trial witnesses, namely his co-workers, who would have provided an alibi for Mr. Moore on the night of the alleged robbery. However, Moore has made no showing that these witnesses became unavailable to him during the 17 month period between the execution of the parole warrant in 2012 and the January 2014 parole hearing. Such a showing would be necessary before we could attribute specific prejudice to this particular period of delay. Furthermore, given how Moore has framed this issue, it appears that the testimony of these alibi witnesses may still have been available to the petitioner, albeit in the form of their former recorded testimony at his 1996 trial. Therefore, Moore has not shown that he was materially prejudiced by being put to the choice of either presenting past recorded, but contemporaneous, testimony of these witnesses in 1996 or relying upon live but hypothetical alibi testimony given some 18 years after the fact.

In sum, Moore's due process claim fails because the testimony he asserts that he lost due to delay was not relevant in parole proceedings, was not demonstrably lost by Moore during the delay in conducting these proceedings, and was apparently actually available to Moore since these witnesses had testified at Moore's state trial in 1996, a trial at which his alibi defense was rejected by the jury which convicted him. Given this failure of proof as to any demonstrable prejudice which can be traced

to the 17 month delay in conducting these proceedings after the marshals executed this parole violator warrant in 2012, this petition fails and should be denied.

Finally, to the extent that Moore's assertion of this alibi claim invites us to indulge in a broader reassessment of his parole eligibility, his argument rests upon a fundamental misunderstanding regarding the nature of his right to parole and the scope of the court's review of parole determinations. First, as a general matter Moore errs when he suggests that he has a constitutionally-protected liberty interest in parole. Quite the contrary, it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole). Indeed, with respect to D.C. prisoners this court has aptly described the limited nature of the due process rights to which they are entitled in a parole hearing, stating:

> It is well settled that the determination of eligibility for parole for a D.C. prisoner has been committed by Congress to the discretion of the Commission. United States v. Addonizio, 442 U.S. 178 (1979); Campbell v. United States Parole Commission, 704 F.2d 106 (3d Cir.1983). Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C.Code offenders even after they

14

are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C.1995) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C.Cir.1996) (holding that the D.C. parole statute and regulations do not create any liberty interest in parole). However, "[a] legislative grant of discretion does not amount to a license for arbitrary behavior." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980). "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (internal quotation omitted).

Dorsey v. U.S. Parole Comm'n, No. 05-1300, 2005 WL 1683658,* 2 (M.D.Pa. July 19, 2005).

The plenary authority of the Parole Commission in this regard is expressly noted by statute, see D.C. Code § 24-131(c)("The Parole Commission shall exercise the authority vested in it by this section pursuant to the parole laws and regulations of the District of Columbia ... ."), which provides that:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board **may** authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code § 24-404(a) (formerly § 204(a))(emphasis added).

Further, case law construing the D.C. parole statute has long recognized that courts are not entitled to indulge in the type of broad review of the underlying merits of various parole decisions that Moore seems to invite us to undertake. <u>Stevens v. Quick</u>, 678 A.2d 28, 31 (D.C. App. 1996)(Court does not review the merits of decision by U.S. Parole Commission, under District's parole regulations); <u>Bennett v. Ridley</u>, 633 A.2d 824, 826 (D.C. App. 1993)("On a petition for a writ of habeas corpus, this court does not review the merits of the [D.C. Parole] Board's decision [to revoke parole], but only whether the petitioner has been deprived of his legal rights by the manner in which the revocation hearing was conducted, in order to determine whether there has been an abuse of discretion."); <u>Smith v. Quick</u>, 680 A.2d 396, 398 (D.C. App. 1996)("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision."); <u>Jones v. Braxton</u>, 647 A.2d 1116 (D.C. App. 1994)(merits of decision denying parole not judicially reviewable); <u>Brown-Bey v. Hyman</u>, 649 A.2d 8 (D.C. App. 1994)(length of set-off to rehearing is "merits" decision, and is not judicially reviewable). Such matters are not subject to judicial review, but rather rest instead in the Commission's discretion. Here, the Commission properly exercised that discretion by noting that Moore's lengthy history of criminal recidivism cautioned

against an early release for this offender.  That judgment is reasonable and rational, and may not now be disturbed by this court.

In sum, Moore may not attack this parole action by complaining that the Parole Commission waited until he completed his state sentence before commencing revocation proceedings since the United States Supreme Court specifically sanctions this practice.  Moody v. Daggett, 429 U.S. 78, 89 (1976).  While Moore experienced a regrettable 17 month delay in receiving a parole hearing after he was remanded to parole custody on this warrant, that delay does not warrant habeas corpus relief where all that was allegedly lost by Moore during this period of delay was the speculative opportunity to call live witnesses to testify to an 18 year old alibi defense that had been rejected by a Maryland jury which convicted Moore of kidnaping in 1996.  Finally, this court may not substitute its judgment for that of the Parole Commission on the question of Moore's entitlement to parole.

### III. Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of August 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
